## UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 04 B 20047 |
|  | ) | Chapter 7 |
| JAMES F. PELLEY, | ) | Judge John H. Squires |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |
| HOUSEHOLD FINANCIAL SERVICES, | ) | Adv. No. 04 A 03473 |
| INC., | ) |  |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| JAMES F. PELLEY, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## MEMORANDUM OPINION

This matter comes before the Court on the motion of Household Financial Services, Inc.

("Household") for summary judgment pursuant to Federal Rule of Bankruptcy Procedure 7056

and Federal Rule of Civil Procedure 56 on its complaint seeking to except a debt owed it by

James F. Pelley (the "Debtor") from discharge pursuant to 11 U.S.C. § 523(a)(2)(A) and §

523(a)(6). For the reasons set forth herein, the Court grants the motion and holds that the debt

is nondischargeable pursuant to § 523(a)(2)(A) and § 523(a)(6). The trial in this matter set to

commence on August 29, 2005 is hereby stricken.

# I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

# II. APPLICABLE SUMMARY JUDGMENT STANDARDS

In order to prevail on a motion for summary judgment, the movant must meet the statutory criteria set forth in Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Rule 56(c) reads in part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c) (2005). *See also Estate of Allen v. City of Rockford*, 349 F.3d 1015, 1019 (7th Cir. 2003).

The primary purpose for granting a summary judgment motion is to avoid unnecessary trials when there is no genuine issue of material fact in dispute. *Trautvetter v. Quick*, 916 F.2d 1140, 1147 (7th Cir. 1990); *Farries v. Stanadyne/Chi. Div.*, 832 F.2d 374, 378 (7th Cir. 1987). Where the material facts are not in dispute, the sole issue is whether the moving party is entitled to a judgment as a matter of law. *ANR Advance Transp. Co. v. Int'l Bhd. of Teamsters, Local 710*, 153 F.3d 774, 777 (7th Cir. 1998). On a motion for summary judgment, "the court has one

task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

In 1986, the United States Supreme Court decided a trilogy of cases which encourages the use of summary judgment as a means to dispose of factually unsupported claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The burden is on the moving party to show that no genuine issue of material fact is in dispute. *Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 322; *Matsushita*, 475 U.S. at 585-86.

All reasonable inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998). The existence of a material factual dispute is sufficient only if the disputed fact is determinative of the outcome under applicable law. *Anderson*, 477 U.S. at 248; *Frey v. Fraser Yachts*, 29 F.3d 1153, 1156 (7th Cir. 1994). "[S]ummary judgment is not an appropriate occasion for weighing the evidence; rather, the inquiry is limited to determining if there is a genuine issue for trial." *Lohorn v. Michal*, 913 F.2d 327, 331 (7th Cir. 1990). The Seventh Circuit has noted that trial courts must remain sensitive to fact issues where they are actually demonstrated to warrant denial of summary judgment. *Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1065-66 (7th Cir. 2000); *Szymanski v. Rite-Way Lawn Maint. Co., Inc.*, 231 F.3d 360, 364 (7th Cir. 2000).

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, identifying those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it

·3·

believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

Once the motion is supported by a prima facie showing that the moving party is entitled to

judgment as a matter of law, a party opposing the motion may not rest upon the mere allegations

or denials in its pleadings; rather, its response must show that there is a genuine issue for trial.

*Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 323; *Matsushita*, 475 U.S. at 587; *Patrick v.*

*Jasper County*, 901 F.2d 561, 565 (7th Cir. 1990).

Local Bankruptcy Rule 7056-1 of the Local Bankruptcy Rules for the United States

Bankruptcy Court for the Northern District of Illinois, which deals with summary judgment

motions, was modeled after LR56.1 of the Local Rules of the United States District Court for the

Northern District of Illinois. Hence, the case law construing LR56.1, and its predecessor Local

Rule 12, applies to Local Bankruptcy Rule 7056-1.

Pursuant to Local Bankruptcy Rule 7056, a motion for summary judgment imposes

special procedural burdens on the parties. Specifically, the Rule requires the moving party to

supplement its motion and supporting memorandum with a statement of undisputed material

facts ("7056-1 statement"). The 7056-1 statement "shall consist of short numbered paragraphs,

including within each paragraph specific references to the affidavits, parts of the record, and

other supporting materials relied upon to support the facts set forth in that paragraph. Failure to

submit such a statement constitutes grounds for denial of the motion." Local Bankr.R. 7056-1B.

Houschold filed a 7056-1 statement that fully complies with the Rule. It includes

numbered paragraphs establishing undisputed facts with specific references to accompanying

exhibits.

The party opposing a summary judgment motion is required by Local Rule 7056-2 to respond ("7056-2 statement") to the movant's 7056-1 statement, paragraph by paragraph, and to set forth any material facts that would require denial of summary judgment, specifically referring to the record for support of each denial of fact. Local Bankr.R. 7056-2. The opposing party is required to respond "to each numbered paragraph in the moving party's statement" and to make "specific references to the affidavits, parts of the record, and other supporting materials relied upon." Local Bankr.R. 7056-2A(2)(a). Most importantly, "[a]ll material facts set forth in the [7056-1] statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." Local Bankr.R. 7056-2B.

The Debtor has wholly complied with this Rule. He has responded to Household's statement paragraph by paragraph, making specific references to supporting materials relied upon as required under the Rule. Moreover, the Debtor has set forth additional facts pursuant to Local Bankruptcy Rule 7056-2A(2)(b). Household filed a reply pursuant to Local Rule 7056-1C. However, in the case of one disputed fact alleged by the Debtor (which is not outcome determinative), Household states little more than that the Debtor admitted to perjuring himself in submissions made to the United States Bankruptcy Court for the Middle District of Florida, and that the Debtor has consented to and received final judgment in the state court. 7056-1C stmt. at ¶¶ C, D, E, F, G, I, J, K, L, O, Q. In addition, Household states that it disputes these facts on the ground that they are based on the Debtor's credibility and affidavit. *Id.* These blanket statements fail to comply with the Rule inasmuch as they do not contain specific references to affidavits or parts of the record and other supporting materials relied upon.

## III.  UNDISPUTED FACTS AND BACKGROUND

The material facts are not in dispute.  On October 3, 1997, the Debtor and James Downey[1] executed a mortgage and note (the "Note") on the Debtor's property located at 1616 Luther Avenue, Oakbrook Terrace, Illinois (the "Property") in the amount of $351,000.00.  On December 4, 1997, the Debtor was advised that Household had acquired the Note.  7056-2A(2) stmt. of Addt'l Facts at ¶ A.  On June 2, 1998, Household signed a release of the Note (the "Release").  The Release was recorded in DuPage County, Illinois on June 19, 1998.  Pl. Ex. 2. According to the Debtor, he did not take any affirmative steps to have Household release the mortgage on the Property.  7056-2A stmt. of Addt'l Facts at ¶ F.  The Debtor further states that the Release was the result of unilateral error on Household's part.  *Id.* at ¶¶ G, L.  Household disputes whether the Release was the result of unilateral error on its part.

Two years later, in June 2000, Household instituted proceedings in the Chancery Division of the Circuit Court of DuPage County, Illinois (the "Mortgage Litigation") seeking a declaratory judgment in connection with the mortgage that the Debtor had executed.  7056-1 stmt. at ¶ 4. By its complaint in the Mortgage Litigation, Household sought to set aside the Release.  *Id.* at ¶ 5.

Subsequent to the Release, the Debtor granted a mortgage in favor of Bank One, N.A. to secure a credit line of $275,000.00, and also granted a mortgage in favor of AT&T Small Business Lending Corporation to secure a note in the principal amount of $90,000.00.  *Id.* at ¶¶

---

[1] Although James P. Downey was a named defendant in the state court litigation, to be discussed *infra*, he is not named in the action at bar and the Court will refer only to the Debtor in the context of the prior state court litigation.

7-8. Both the Bank One and AT&T loans were secured by the Property that had also been used to secure the Note. *Id.* at ¶ 9.

Throughout the Mortgage Litigation, the Debtor was represented by counsel. *Id.* at ¶¶ 11-12. Household and the Debtor engaged in written discovery, including written interrogatories, requests for production and requests to admit in the Mortgage Litigation. *Id.* at ¶ 13.

On April 23, 2001, Household filed a motion for summary judgment in the Mortgage Litigation. *Id.* at ¶ 14. That same day, Household also filed a motion to strike the answers to Household's requests for admissions and accompanying interrogatories that had been filed by the Debtor, and to deem various matters that had been asserted therein admitted. *Id.* at ¶ 15. The Debtor did not file a response to Household's motion. *Id.* at ¶ 16. Instead, by letter dated June 1, 2001, counsel for the Debtor advised Household's counsel that the Debtor would consent to the entry of judgment against him. *Id.*

On September 6, 2001, the state court entered an agreed final judgment order (the "Final Order"), whereby judgment was entered against the Debtor in the amount of the principal due under the Note, plus accrued interest, totaling $523,646.49. *Id.* at ¶ 19. The terms and conditions of the Final Order were negotiated and agreed upon by the parties, and the Debtor consented to the entry of the Final Order. *Id.* at ¶¶ 18, 20. The Final Order required the judgment to be satisfied by payments to be made in accordance with a schedule under which a first installment of $50,000.00 was to be made on or before September 15, 2001, with monthly installments of $4,000.00 to be made thereafter. *Id.* at ¶ 21. The Final Order also provided that the state court would retain jurisdiction of the Debtor and subject matter in order to enforce the

-7-

Final Order. *Id.* at ¶ 22. It also reserved ruling on the issue of the Debtor's alleged fraud. *Id.*
at ¶ 11.

The Debtor failed to make any payments in accordance with the Final Order. *Id.* at ¶ 24.
By Household's motion, on October 1, 2001, the state court entered an order to show cause why
the Debtor should not be held in contempt of court. *Id.* at ¶ 25. On October 23, 2001, after the
Debtor failed to appear as so ordered, the state court found the Debtor in contempt of court and
continued the matter for entry of findings and an order in connection with the contempt finding.
*Id.* at ¶¶ 25, 28, 29.

Household subsequently filed a motion for entry of an order of contempt in which it
requested a finding that the Debtor had willfully defrauded the state court and Household, and
had committed willful and malicious injury to the property and interests of Household. *Id.* at ¶¶
30-31. The motion also sought a finding that the Release had been procured through willful
fraud. *Id.*

The Debtor filed a response to the motion for entry of contempt in which he alleged that
the requested order was improper because Household had failed to present any facts or evidence
to substantiate its allegation that the Debtor was guilty of willfully fraudulent conduct. *Id.* at ¶
33. The response also contended that the requested order of contempt exceeded the scope of the
show cause proceedings because the show cause proceedings pertained only to whether the
Debtor should have been held in contempt for failure to make payments under the Final Order,
and not to the Debtor's alleged conduct prior to the entry of the Final Order. *Id.*

On December 11, 2001, at a hearing where both parties were represented by counsel, the
state court entered an order of contempt (the "Contempt Order"), finding that the conduct of the

-8-

Debtor in connection with the Mortgage Litigation had "revealed a pattern of willful deceit, deception, and disregard of [his] legal obligations and the process of this Court. . . ." *Id.* at ¶ 36; Pl. Ex. 18 at p. 3 at ¶ 12.

In the Contempt Order, the state court found that the Debtor attempted "to use the offices of this Court in a continuing and fraudulent effort to avoid the obligations reflected by the [Note]. The Court further finds that the conduct . . . reflects willful fraud of this Court and plaintiff Household Financial Services, Inc., as well as willful and malicious injury to the property and interests of Household." *Id.* at ¶ 37; Pl. Ex. 18 at p. 3 ¶¶ 15-16. The court further stated that the Debtor "had a full and fair opportunity to participate, and in fact [has] participated, in the litigation of the issues concerning whether [his] conduct amounted to willful fraud as found herein. [He] has participated in the underlying litigation through discovery and the entry of the [Final Order], and [he has] participated through [his] counsel in these post-judgment proceedings." *Id.* at 38; Pl. Ex. 18 at p. 3 ¶ 17. Additionally, the state court stated that the release of the Note and the Final Order "are adjudged to have been procured through willful fraud, and are further adjudged to reflect the willful and malicious injury to the property interests of Household." *Id.* at ¶ 39.[2]

On May 24, 2004, the Debtor filed a bankruptcy petition under Chapter 7 of the Bankruptcy Code. On September 10, 2004, Household filed this adversary proceeding wherein it alleges that the Mortgage Litigation judgment debt is nondischargeable pursuant to §

___

[2] The Debtor did not appeal the Contempt Order; doing so would have been the appropriate method to challenge the state court's findings had he believed them to be erroneous. This Contempt Order cannot be collaterally attacked here. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

523(a)(2)(A) and § 523(a)(6) because, as the state court found, the Debtor's conduct in the

context of the Mortgage Litigation and enforcement proceedings established a pattern of

fraudulent intent and willful and malicious injury to Household.  Household filed the instant

motion for summary judgment on March 30, 2005, arguing that based on the state court's

findings in the Mortgage Litigation contained in the Contempt Order, this Court should apply

the doctrine of collateral estoppel and hold the debt nondischargeable.  Household can be

awarded summary judgment if there is no genuine issue of material fact and it is entitled to

judgment as a matter of law.  The facts are not in dispute.  Thus, the only question then is

whether those facts entitle Household to judgment as a matter of law.


## IV. STANDARDS

### A. Exception to the Discharge of a Debt

The party seeking to establish an exception to the discharge of a debt bears the burden

of proof.  *In re Harasymiw*, 895 F.2d 1170, 1172 (7th Cir. 1990); *Banner Oil Co. v. Bryson (In

re Bryson)*, 187 B.R. 939, 961 (Bankr. N.D. Ill. 1995).  The United States Supreme Court has

held that the burden of proof required to establish an exception to discharge is a preponderance

of the evidence.  *Grogan v. Garner*, 498 U.S. 279, 291 (1991); *see also In re McFarland*, 84

F.3d 943, 946 (7th Cir.), *cert. denied*, 519 U.S. 931 (1996); *In re Thirtyacre*, 36 F.3d 697, 700

(7th Cir. 1994).  Exceptions to discharge are to be construed strictly against a creditor and

liberally in favor of a debtor in order to further the policy of providing a debtor with a fresh start

in bankruptcy.  *In re Morris*, 223 F.3d 548, 552 (7th Cir. 2000); *In re Reines*, 142 F.3d 970, 972-

73 (7th Cir. 1998), *cert. denied*, 525 U.S. 1068 (1999); *In re Scarlata*, 979 F.2d 521, 524 (7th Cir.

1992); *In re Zarzynski*, 771 F.2d 304, 306 (7th Cir. 1985). "The statute is narrowly construed so as not to undermine the Code's purpose of giving the honest but unfortunate debtor a fresh start." *Park Nat'l Bank & Trust of Chi. v. Paul (In re Paul)*, 266 B.R. 686, 693 (Bankr. N.D. Ill. 2001).

## B. 11 U.S.C. § 523(a)(2)(A)

Section 523 of the Bankruptcy Code enumerates specific, limited exceptions to the dischargeability of debts. Section 523(a)(2)(A) provides that:

> (a) A discharge under section 727 . . . does not discharge an individual debtor from any debt–
>
> . . .
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–
>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

11 U.S.C. § 523(a)(2)(A) (2005). Section 523(a)(2)(A) lists three separate grounds for dischargeability: actual fraud, false pretenses and a false representation. *Id.*; *Bletnitsky v. Jairath (In re Jairath)*, 259 B.R. 308, 314 (Bankr. N.D. Ill. 2001). A single test is applied to all three grounds even though the elements for each vary under common law. *Jairath*, 259 B.R. at 314.

### 1. False pretenses or false representation

In order to except false pretenses or a false representation from discharge under § 523(a)(2)(A), a creditor must establish the following elements: (1) the debtor made a false representation of fact (2) which the debtor either (a) knew to be false or made with reckless disregard for its truth and (b) made with an intent to deceive; and (3) the creditor justifiably relied on the false representation. *Baker Dev. Corp. v. Mulder (In re Mulder)*, 307 B.R. 637, 643

-11-

(Bankr. N.D. Ill. 2004); *Bednarsz v. Brzakala (In re Brzakala)*, 305 B.R. 705, 710 (Bankr. N.D. Ill. 2004). To prevail on a § 523(a)(2)(A) complaint, all three elements must be established. *Glucona Am., Inc. v. Ardisson (In re Ardisson)*, 272 B.R. 346, 357 (Bankr. N.D. Ill. 2001). Failure to establish any one fact is outcome determinative. *Jairath*, 259 B.R. at 314.

"Proof of intent to deceive is measured by the debtor's subjective intention at the time the representation was made." *CFC Wireforms, Inc. v. Monroe (In re Monroe)*, 304 B.R. 349, 356 (Bankr. N.D. Ill. 2004). "Where a person knowingly or recklessly makes false representations which the person knows or should know will induce another to act, the finder of fact may logically infer an intent to deceive." *Jairath*, 259 B.R. at 315.

Reliance on a false pretense or false representation under § 523(a)(2)(A) must be "justifiable." *Field v. Mans*, 516 U.S. 59, 74-75 (1995). The justifiable reliance standard imposes no duty to investigate unless the falsity of the representation is readily apparent. *Id.* at 70-72. Whether a party justifiably relies on a misrepresentation is determined by looking at the circumstances of a particular case and the characteristics of a particular plaintiff, not by an objective standard. *Id.* at 71; *Bombardier Capital, Inc. v. Dobek (In re Dobek)*, 278 B.R. 496, 508 (Bankr. N.D. Ill. 2002). To satisfy the reliance element of § 523(a)(2)(A), the creditor must show that the debtor made a material misrepresentation that was the cause-in-fact of the debt that the creditor wants excepted from discharge. *Mayer v. Spanel Int'l Ltd. (In re Mayer)*, 51 F.3d 670, 676 (7th Cir.), *cert. denied*, 516 U.S. 1008 (1995) ("Reliance means the conjunction of a material misrepresentation with causation in fact."). "[A] person is justified in relying on a representation of fact although he might have ascertained the falsity of the representation had he

made an investigation." *Mercantile Bank v. Canovas*, 237 B.R. 423, 429 (Bankr. N.D. Ill. 1998)

(*quoting Field v. Mans*, 516 U.S. at 70).

### 2. Actual fraud

The Seventh Circuit Court of Appeals has made it clear that misrepresentation and

reliance thereon are not always required to establish fraud. *McClellan v. Cantrell*, 217 F.3d 890,

894 (7th Cir. 2000). Indeed, the Seventh Circuit recently defined the term "fraud":

> 'Fraud is a generic term, which embraces all the multifarious
> means which human ingenuity can devise and which are resorted
> to by one individual to gain an advantage over another by false
> suggestions or by the suppression of truth. No definite and
> invariable rule can be laid down as a general proposition defining
> fraud, and it includes all surprise, trick, cunning, dissembling, and
> any unfair way by which another is cheated.'

*Id.* at 893 (*quoting Stapleton v. Holt*, 250 P.2d 451, 453-54 (Okla. 1952)). "Actual fraud" is not

limited to misrepresentation, but may encompass "any deceit, artifice, trick, or design involving

direct and active operation of the mind, used to circumvent and cheat another." *Id.* Hence, a

different analysis must be utilized when a creditor alleges actual fraud. *Id.* The *McClellan* court

opined that because common law fraud does not always take the form of a misrepresentation, a

creditor need not allege misrepresentation and reliance thereon to state a cause of action for

actual fraud under § 523(a)(2)(A). *Id.* Rather, the creditor must establish the following: (1) a

fraud occurred; (2) the debtor intended to defraud the creditor; and (3) the fraud created the debt

that is the subject of the discharge dispute. *Id.* The fraud exception under § 523(a)(2)(A) does

not reach constructive frauds, only actual ones. *Id.* at 894. "Though cases often say that

exclusions from dischargeability should be narrowly construed, we have emphasized that they

serve vital functions." *Id.* at 893 (*quoting Mayer*, 51 F.3d at 674) (internal citations omitted).

"Congress concluded that preventing fraud is more important than letting defrauders start over with a clean slate, and we must respect that judgment." *Id.* (*quoting Mayer*, 51 F.3d at 674).

## C. 11 U.S.C. § 523(a)(6)

Section § 523(a)(6) of the Bankruptcy Code provides that:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt–
>> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

11 U.S.C. § 523(a)(6) (2005). In order to be entitled to a determination of nondischargeability under § 523(a)(6), the movant must prove three elements by a preponderance of the evidence: (1) that the debtor intended to and caused an injury to the creditor's property interest; (2) that the debtor's actions were willful; and (3) that the debtor's actions were malicious. *Mulder*, 307 B.R. at 641; *Ardisson*, 272 B.R. at 356; *French, Kezelis & Kominiarek, P.C. v. Carlson (In re Carlson)*, 224 B.R. 659, 662 (Bankr. N.D. Ill. 1998), *aff'd*, No. 99 C 6020, 2000 WL 226706 (N.D. Ill. Feb. 22, 2000), *aff'd*, No. 00-1720, 2001 WL 1313652 (7th Cir. Oct. 23, 2001). "Since a person will rarely, if ever, admit to acting in a willful and malicious manner, those requirements must be inferred from the circumstances surrounding the injury at issue." *Cutler v. Lazzara (In re Lazzara)*, 287 B.R. 714, 723 (Bankr. N.D. Ill. 2002).

"The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis in original). Under *Geiger* and its more stringent standards, to satisfy the requirements of § 523(a)(6), the creditor must plead and prove that the debtor actually intended to harm it and not merely that the

debtor acted intentionally and it was thus harmed. *Id.* at 61-62. In other words, the debtor must have intended the consequences of his act. *Id; see also Berkson v. Gulevsky (In re Gulevsky),* 362 F.3d 961, 964 (7th Cir. 2004). Injuries either negligently or recklessly inflicted do not come within the scope of § 523(a)(6). *Geiger,* 523 U.S. at 64.

The Supreme Court did not define the scope of the term "intent" utilized to describe willful conduct. Recent decisions, however, have found that either a showing of subjective intent to injure the creditor or a showing of a debtor's subjective knowledge that injury is substantially certain to result from his acts can establish the requisite intent required in *Geiger. See Su v. Carrillo (In re Su),* 259 B.R. 909, 913 (B.A.P. 9th Cir. 2001); *State of Tex. v. Walker,* 142 F.3d 813, 823 (5th Cir. 1998), *cert. denied,* 525 U.S. 1102 (1999); *Markowitz v. Campbell (In re Markowitz),* 190 F.3d 455, 463-65 (6th Cir. 1999); *Fidelity Fin. Servs. v. Cox (In re Cox),* 243 B.R. 713, 719 (Bankr. N.D. Ill. 2000). Because a person will rarely admit to acting in a willful and malicious manner, those requirements must be inferred from the circumstances surrounding the injury. *Lazzara,* 287 B.R. at 723.

An act is "malicious" if it is taken "in conscious disregard of one's duties or without just cause or excuse. . . ." *Thirtyacre,* 36 F.3d at 700. The test for maliciousness under § 523(a)(6) is (1) a wrongful act, (2) done intentionally, (3) which causes injury to the creditor, and (4) is done without just cause and excuse. *Paul,* 266 B.R. at 696. A debtor does not have to act with ill will or a specific intent to do harm to the creditor for the conduct to be malicious. *Thirtyacre,* 36 F.3d at 700. Whether an actor behaved willfully and maliciously is ultimately a question of fact reserved for the trier of fact. *Id.*

-15-

### D. **Collateral Estoppel**

The doctrine of collateral estoppel precludes a relitigation of issues previously determined in another court. *Brown v. Felsen*, 442 U.S. 127, 139 (1979); *Jensen v. Foley*, 295 F.3d 745, 748 (7th Cir. 2002) (finding that collateral estoppel "prevents a party from relitigating an issue that it has previously litigated and lost"). The United States Supreme Court has held that collateral estoppel principles apply to proceedings involving the dischargeability of a debt under 11 U.S.C. § 523(a). *Grogan*, 498 U.S. at 285 n.11 ("[C]ollateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)."). Hence, "where a court of competent jurisdiction has previously ruled against a debtor upon specific issues of fact that independently comprise elements of a creditor's nondischargeability claim, the debtor may not seek to relitigate those underlying facts in bankruptcy court, provided that the issues involved had been 'actually litigated.'" *Carlson*, 224 B.R. at 663.

Federal courts must give full faith and credit to the collateral estoppel effects of state court judgments under state standards. 28 U.S.C. § 1738; *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985); *Am. Nat'l Bank & Trust Co. v. Reg'l Transp. Auth.*, 125 F.3d 420, 430 (7th Cir. 1997). Bankruptcy courts are bound by this obligation. *See Gouveia v. Tazbir*, 37 F.3d 295, 300 (7th Cir. 1994). "The preclusive effect of a state court judgment in a federal case is a matter of state rather than of federal law." *A.D. Brokaw v. Weaver*, 305 F.3d 660, 669 (7th Cir. 2002) (*quoting CIGNA Healthcare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849, 856 (7th Cir. 2002)). Because this matter presents a question regarding the collateral estoppel effect of an Illinois state court order, the Court must apply the Illinois law of collateral estoppel.

·16·

*In re Catt*, 368 F.3d 789, 790-91 (7th Cir. 2004) ("The effect of a judgment in subsequent

litigation is determined by the law of the jurisdiction that rendered the judgment. . . .").

Under Illinois law, the essential elements for application of collateral estoppel are: (1)

the issue decided in the prior adjudication must be identical to the issue in the current action; (2)

the party against whom the estoppel is asserted must have been a party or in privity with a party

to the prior case; and (3) there must have been a final judgment on the merits in the prior action.

*Kalush v. Deluxe Corp.*, 171 F.3d 489, 493 (7th Cir. 1999) (*citing Herzog v. Lexington Township*,

167 Ill.2d 288, 295, 657 N.E.2d 926, 929-30 (1995)). *See also Nowak v. St. Rita High School*,

197 Ill.2d 381, 389-90, 757 N.E.2d 471, 477 (2001); *DuPage Forklift Serv., Inc. v. Material

Handling Servs., Inc.*, 195 Ill.2d 71, 77, 744 N.E.2d 845, 849 (2001). In Illinois, collateral

estoppel is "limited to the precise factual or legal issues actually litigated and decided when a

prior order was entered." *People v. Williams*, 138 Ill.2d 377, 393, 563 N.E.2d 385, 392 (1990).


## V. **DISCUSSION**

Household argues that its claim against the Debtor that arose from the Mortgage

Litigation was found by the state court to result from the Debtor's fraud and willful and

malicious injury to Household's property interests, and is therefore nondischargeable under the

Bankruptcy Code. "If a state court finds that a debtor intentionally injured a creditor, the

bankruptcy court is required under the doctrine of collateral estoppel to hold the debt

nondischargeable." *Prairie Eye Center v. Butler (In re Butler)*, 297 B.R. 741, 747-48 (Bankr.

C.D. Ill. 2003). "In the Seventh Circuit, collateral estoppel can apply to cases in which a court

hearing a nonbankruptcy case has determined factual issues relevant to a subsequent

nondischargeability claim, provided that the nonbankruptcy court used the same standards that

a bankruptcy court would have used in determining the issues which are subsequently given

collateral estoppel effect." *Katahn Assocs., Inc. v. Wien (In re Wien)*, 155 B.R. 479, 484 (Bankr.

N.D. Ill. 1993).   "Although Congress has vested jurisdiction to determine the dischargeability

of debt in the bankruptcy court, it does not mean that every last fact issue bearing on

dischargeability must be re-litigated, re-tried, and again decided when there has been a prior

determination of the same facts by a court of competent jurisdiction." *Id.*

In this matter, the factual findings articulated by the state court derived from the same

standards this Court uses for purposes of § 523(a)(2)(A) and § 523(a)(6) nondischargeability

actions, and this Court gives full faith and credit to the state court's Contempt Order.  In this

matter, the requirements for the Court to apply the doctrine of collateral estoppel have been met.

Applying Illinois law, the Court will discuss each requisite element for the application

of collateral estoppel.  First, the issues decided in the prior adjudication must be identical to the

issues in the current action.  Detailed findings of fact from the earlier proceeding are necessary

to enable the bankruptcy court in the subsequent adversary proceeding to determine which facts

were actually proven, which issues were decided, and what was essential to the other court's

judgment.  It is both fair and logical that a party be required to prove all essential elements of its

case at least once before the doctrine of collateral estoppel may be appropriately applied in the

second proceeding.

"A bankruptcy court usually reviews the entire record of an earlier proceeding when

deciding whether a matter has been actually litigated for purposes of collateral estoppel." *Id.*

at 486. In this matter, the Court has been provided with a sufficient portion of the record from

-18-

the earlier proceeding including the Contempt Order and the corresponding hearing transcript.

A review of that record indicates that with respect to the elements under § 523(a)(2)(A), the state

court articulated its findings of fraud, and the Court thus finds that the elements of actual fraud

were actually litigated in the state court.[3]

As stated in the Contempt Order, the state court found that the conduct of the Debtor

> in connection with [the Mortgage Litigation] revealed a pattern of wilful [sic] deceit, deception and disregard of [his] legal obligations and the process of this Court. Not only [has he] taken every advantage of the wrongful release of [his] legal obligation reflected by the Household Mortgage and Note, but [he has] failed to comply with the Agreed Final Judgment Order, and [has] failed to appear as directed to explain said failure despite having been afforded notice via proper service and a full opportunity to be heard.

Pl. Ex. 18 at p. 3 ¶ 12.

The Contempt Order also stated that the Debtor represented that he had the financial

means to comply with the state court's direction and that he intended to comply with that

direction, however "[s]aid representations were false, and were made with full knowledge of

their falsity and an intent to deceive Household and the Court. Both Household and the Court

relied on these representations in, respectively, agreeing to and entering the [Final Order]. Said

representations were thus fraudulent." *Id.* at ¶ 13. In addition, the state court found that both the

release of the Note and the Final Order "are adjudged to have been procured through willful

---

[3] In the Final Order, the state court reserved ruling on the fraud and conversion issues and stated that it "makes no finding regarding . . . any claim that the conduct of [the Debtor], including but not limited to the conduct in obtaining the release of the [Note], was wilfully [sic] fraudulent, or that the obligations of [the Debtor] are otherwise nondischargeable in bankruptcy." Pl. Ex. 10 at p. 4 ¶ 11. In the Contempt Order, however, the state court made its express findings on both the fraud and conversion issues and stated that the Contempt Order "supercedes paragraph 11 of the [Final Order]. . . ." Pl. Ex. 18 at p. 4 ¶ 8.

fraud. . . ." *Id.* at p. 4 ¶ 3. As demonstrated by the state court record and Contempt Order, this Court finds that the issue of actual fraud was actually litigated and decided for purposes of collateral estoppel, and that the state court made a finding of actual fraud for purposes of § 523(a)(2)(A).

Turning to § 523(a)(6), the state court found that the Debtor's conduct with respect to the Mortgage Litigation constituted willful and malicious injury to the property and interests of Household. As set forth in the Contempt Order, in addition to finding actual fraud, the state court found that the Debtor's conduct reflected "willful and malicious injury to the property and interests of Household." Pl. Ex. 18 at p. 3 ¶ 16. The state court also found that the release of the Note and the Final Order were "adjudged to reflect the willful and malicious injury to the property interests of Household." *Id.* at p. 4 ¶ 3. As required by § 523(a)(6), the state court adjudged the Debtor's behavior to have caused willful and malicious injury to Household. Therefore, this Court finds that the issue of willful and malicious injury to Household under § 523(a)(6) was actually litigated and decided in the state court for purposes of collateral estoppel. Accordingly, the first element for the application of collateral estoppel has been met.

Second, the Court finds that both the Debtor and Household were parties to the prior proceedings. Thus, the second requirement for the application of the doctrine of collateral estoppel under Illinois law has been satisfied. In addition, at all times in the state court proceedings, the Debtor was represented by counsel who argued unsuccessfully at the Contempt Order hearing.

The third element of collateral estoppel involves final judgment on the merits in the prior action. The merits of the § 523(a)(2)(A) and § 523(a)(6) nondischargeability action must have

been adjudicated to final judgment in order for collateral estoppel to be applicable. The Court

finds that the Contempt Order constitutes a final adjudication on the merits, and according to that

order, all essential elements under § 523(a)(2)(A) and § 523(a)(6) were adjudicated to final

judgment. Therefore, the third and final element for collateral estoppel to apply has been met.

The Court holds that there are no material issues of fact in dispute and that Household is entitled

to judgment as a matter of law. Thus, the Court hereby grants Household's motion for summary

judgment.

## V. CONCLUSION

For the foregoing reasons, the Court grants the motion of Household for summary

judgment. The Court finds the debt owed by the Debtor to Household is nondischargeable

pursuant to § 523(a)(2)(A) and § 523(a)(6). The trial in this matter set to commence on August

29, 2005 is hereby stricken.

This Opinion constitutes the Court's findings of fact and conclusions of law in

accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered

pursuant to Federal Rule of Bankruptcy Procedure 9021.

ENTERED:

DATE: _____7/11/5_____

John H. Squires
United States Bankruptcy Judge

cc: See attached Service List

-21-

## SERVICE LIST

### Household Financial Services, Inc. v. James F. Pelley
**Adversary Case No. 04 A 03473**

Luke DeGrand, Esq.
Luke DeGrand & Associates, P.C.
20 N. Clark Street, Suite 1450
Chicago, IL 60602

Gina B. Krol, Esq.
Cohen & Krol
105 W. Madison Street, Suite 1100
Chicago, IL 60602

David E. Cohen, Esq.
David E. Cohen, P.C.
205 W. Wacker Drive, Suite 2333
Chicago, IL 60606

Ira Bodenstein, United States Trustee
227 W. Monroe Street
Suite 3350
Chicago, IL 60606